## MAUPIN v. STATE.

(*Knoxville.* November 5, 1890.)

CARRYING ARMS. *Facts that sustain conviction for.*

Conviction for unlawfully carrying arms is fully sustained by proof that defendant, while regularly engaged in tending a mill at which he ate and slept, carried a pocket-pistol upon his person with intent to go armed while at his ordinary work in the mill-house.

FROM WASHINGTON.

Appeal in error from Circuit Court of Washington County. A. J. BROWN, J.

I. E. REEVES and NEWTON HACKER for Maupin.

Attorney-general PICKLE for State.

CALDWELL, J. John P. Maupin was convicted on a presentment for carrying arms unlawfully. He has appealed in error.

The contention of his counsel is that the verdict is not supported by the evidence, and on that ground alone reversal and new trial are sought.

Only three witnesses testified before the jury: William Curtis for the State, and —— Maupin and the defendant for the defense. Curtis stated, in substance, that he was at the grist-mill of the

defendant a short time before the finding of the presentment; that the defendant proposed to sell him some furniture then in the mill; that while "leaning over" showing witness the furniture the defendant dropped a pocket-pistol from some part of his person on the floor at their feet; that the defendant picked up that pistol and looked at it, and then pulled another pocket-pistol from his pocket, telling witness at the time that "some parties had threatened him, and that he had prepared to defend himself." This witness further stated that defendant operated the mill himself; that he "both ate and slept" in the mill; and, finally, that witness "did not see defendant have either of the pistols on the outside of the mill."

The defendant stated substantially the same facts, except that he testified he did not have either of the pistols concealed on his person, but that the one which dropped on the floor fell from the flour chest near by, and that he took the other one from a shelf in the mill, and not from his pocket. The defendant further said: "I lived about one-half mile from the mill. When I would go home I never took the pistols with me."

None but these two were present on the occasion mentioned by them. The other witness said he had frequently been "in the mill while defendant was tending it," and that he had frequently seen defendant's two pistols "lying on the shelves in the mill."

Such is the evidence in the case. The only conflict is with respect to the place at which defendant had the pistols—whether concealed about his person, as stated by Curtis, or on the chest and shelf, as stated by the defendant.

The jury saw fit to believe the statement of Curtis, and in that we think they were right. So far as can be seen from this record, he is entitled to the fullest credit. He is disinterested and unimpeached, while the defendant is, of course, as much interested as a witness could be in such a case.

Then, the question is whether the testimony of Curtis makes out the case, whether it is a violation of law for a man to carry pocket-pistols about his person while inside the walls of a grist-mill and engaged in its operation.

We think the case is well made out; that the defendant's conduct was a manifest violation of the statute against carrying weapons. The mill was a public place, a place to which customers were constantly invited and daily expected to go. In such a place a man, though he be the proprietor, may not lawfully carry pistols concealed about his person. That the defendant had been "threatened," that he "ate and slept" in the mill, cannot alter the case. There were other means by which he could well have protected himself. The mill was not his home.

Affirm the judgment with costs.