PEOPLE ex rel. DARLING v. WARDEN OF CITY PRISON.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

1. WEAPONS (§ 4*)—OFFENSES—POSSESSION—CONSTRUCTION OF STATUTES.

Penal Law (Consol. Laws 1909, c. 40) § 1897, makes one guilty of a felony who "carries or possesses" any weapon known as a slungshot, billy, or metal knuckles, and the second paragraph makes any person under 16 years of age guilty of a misdemeanor who shall "have, carry or have in his possession in any public place" any article described in the last section. The third paragraph makes any person over 16 years of age guilty of a misdemeanor who shall "have or carry concealed upon his person * * * any pistol" without a written license therefor issued by a police magistrate, etc. This section was amended by Laws 1911, c. 195, by inserting between the second and third paragraphs a provision making any person over 16 years of age guilty of a misdemeanor who shall "have in his possession in any city," etc., "any pistol * * * of a size which may be concealed upon the person, without a written license therefor" issued by a police magistrate. The same chapter also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

added to article 172 a new section, section 1914, which required every person selling pistols, etc., of a size which may be concealed upon the person, to keep a register of such sales, giving the name of the purchaser, etc., and required him to produce a permit "for possessing or carrying the same, as required by law." *Held*, that the portion inserted by Laws 1911 prohibited a person over 16 years of age from having a pistol in his possession without a permit, at any time or place, whether in his residence or elsewhere.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. STATUTES (§ 184*)—CONSTRUCTION.

Statutes must be construed in view of the existing condition of the law and the evil aimed at.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. § 184.*]

3. WEAPONS (§ 3*)—CONSTITUTIONAL AMENDMENTS—OPERATION ON STATES.

The first 10 amendments to the federal Constitution do not operate on the states, so that the second amendment thereto, providing that the right of the people to keep and bear arms shall not be infringed, merely restricted the federal government, and did not grant such right to the people of the state.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 3; Dec. Dig. § 3.*]

4. WEAPONS (§ 3*)—CONSTITUTIONALITY OF THE STATUTES.

The state statutes prohibiting the carrying of concealed weapons does not infringe the constitutional right of the citizen, being merely a police regulation.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 3; Dec. Dig. § 3.*]

5. CONSTITUTIONAL LAW (§ 39*)—BILL OF RIGHTS.

The rights enumerated in the Civil Rights Law (Laws 1909, c. 14 [Consol. Laws 1909, c. 6]) were not created by the statute, but pertain to the character of free men in a free state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 37; Dec. Dig. § 39.*]

6. CONSTITUTIONAL LAW (§ 39*)—BILL OF RIGHTS—INVALIDITY OF STATUTES.

In order to declare a statute void for violating the fundamental rights enumerated in Civil Rights Law (Laws 1909, c. 14 [Consol. Laws 1909, c. 6]), the statute should be clearly shown to directly violate such fundamental rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 37; Dec. Dig. § 39.*]

7. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER.

Legislation for the public welfare and safety is valid as an exercise of the state's police power, though it imposes restraints and burdens upon individuals; the question being only whether the means employed are appropriate and reasonably necessary to accomplish the purpose, and not unduly oppressive.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

8. WEAPONS (§ 3*)—OFFENSES—POSSESSION—VALIDITY OF STATUTE.

Laws 1911, c. 195, amending Penal Law (Consol. Laws 1909, c. 40) § 1897, so as to make any person over 16 years of age guilty of a misdemeanor who has "in his possession" any pistol of a size which may be concealed upon the person, without a written license, is a legitimate ex-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ercise of the state's police power, though construed to prohibit having a pistol in one's possession in his room, though not on his person.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 3; Dec. Dig. § 3.*]

9. CONSTITUTIONAL LAW (§ 70*)—CONSTITUTIONALITY OF STATUTES—WISDOM.
The courts are not concerned with the wisdom of a law, or whether it will accomplish its purpose, if it be constitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

10. CONSTITUTIONAL LAW (§ 46*)—CONSTITUTIONALITY OF STATUTES.
One seeking to have a statute declared invalid as beyond the legislative power must definitely and clearly point out the want of power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the People, on the relation of Joseph F. Darling, against the Warden of the City Prison. From an order (74 Misc. Rep. 151, 134 N. Y. Supp. 335) discharging relator, defendant appeals. Reversed, and writ quashed, and relator remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Charles S. Whitman, Dist. Atty., of New York City (Robert S. Johnstone, of New York City, of counsel), for appellant.

Joseph F. Darling, of New York City, for respondent.

CLARKE, J. The relator notified the police that he had a pistol in his house without a permit. Thereupon a captain of police went to his house and found a loaded revolver and some loaded shells in a small cabinet in the bedroom adjoining the parlor. He asked the defendant why he kept the revolver there, and he said he preferred not to answer the question. He asked if he had a permit, to which he replied, "No." Whereupon the captain placed the relator under arrest and took him before a city magistrate, charging him with a violation of section 1897 of the Penal Law, as amended in 1911. Relator was held in $500 bail for trial at Special Sessions. He thereupon sued out a writ of habeas corpus and was discharged; the court saying:

"The precise and only question here involved is as to whether the possession thereby made an offense is actual physical possession or a constructive possession. The word 'possession' means, depending on the connection in which it is used, physical possession or constructive possession. The act in question is a penal statute, and under well-settled principles is to be strictly construed. To hold that every possible kind of constructive possession is made a crime would be to give to the language a very broad significance. By limiting it to physical possession the necessary requirements of the language are met, and, in view of the rules governing the interpretation of penal statutes, I do not think it is proper to extend its meaning beyond the actual requirements of the language used. It would certainly be going very far to assume that the Legislature intended to make every constructive possession of such a weapon a crime; such construction would raise a very serious question as to whether so construed the act was not unconstitutional as without the police power, which every sovereign state possesses."

—————————————————————————————————
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] In 1910, section 1897 of the Penal Law, founded in article 172 entitled "Public Safety," provided that:

"A person who attempts to use against another, or who carries, or possesses any instrument or weapon of the kind commonly known as a slungshot, billy, sand club or metal knuckles, or who with intent to use the same against another carries or possesses a dagger, dirk or dangerous knife is guilty of a felony. Any person under the age of sixteen years, who shall have, carry or have in his possession in any public place any of the articles named or described in the last section which it is forbidden therein to offer, sell, loan, lease or give to him, shall be guilty of a misdemeanor. Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city, village or town of this state, any pistol, revolver or other firearm without a written license therefor, theretofore issued to him by a police magistrate of such city or village or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance of such city, village or town shall be guilty of a misdemeanor. No person not a resident of the United States, shall have or carry firearms or dangerous weapons in any public place at any time. This section shall not apply to the regular and ordinary transportation of firearms as merchandise, nor to sheriffs, policemen or to other duly appointed peace officers, nor to duly authorized military or civil organizations when parading, nor to the members thereof when going to and from the places of meeting of their respective organizations."

This section was amended by chapter 195 of the Laws of 1911. The first paragraph was amended by adding to the weapons enumerated. The third and fourth paragraphs were amended by raising the offense from a misdemeanor to a felony in each case. There was inserted between the second and third paragraphs, as the section then existed, the following:

"Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefor, issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance in such city, village or town, shall be guilty of a misdemeanor."

Evidently the Legislature intended to define, and provide punishment for, a different offense from any that had theretofore been covered by the section. It was inserted immediately before a paragraph which provided that any person over the age of 16 years who shall have or carry concealed upon his person a pistol without a license should be guilty of a felony; and it had used in two of the other paragraphs of the same section the words "who shall have or carry," and in the other "who carries or possesses." But when it came to amend by inserting this entirely new provision in the center of the section the wording of which was clear and before the Legislature for amendment, it left out the word "carries" which appeared in each of the other paragraphs, and provided that:

"Any person over the age of sixteen years who shall have in his possession * * * any pistol * * * of a size which may be concealed upon the person, without a written license therefor, * * * shall be guilty of a misdemeanor."

The learned court at Special Term has limited the language of the paragraph added to the section by, in effect, writing into the language thereof words which the Legislature left out, so that he makes it read, any person who shall carry or have in his physical possession, any pistol which may be concealed upon the person, shall be guilty of a misdemeanor. As the following clause already read that any person who shall have or carry concealed upon his person a pistol shall be guilty of a felony, this construction would make the offense a felony or a misdemeanor, depending upon whether the pistol should be carried upon the person concealed, or not; and the sole effect of the act, which was passed, after considerable public discussion, as a forward step in an attempt to limit crimes of violence, would be to provide against the open carrying of pistols which were of a size to be concealed—an utterly unreasonable conclusion, in view of the fact that there was no evil of that kind to be protected against and that such a remedy for the real evil that did exist would be inapplicable and inefficient.

[2] The legislation must be interpreted in view of the preceding condition of the law and the evil aimed at. The language itself, "a pistol of a size which may be concealed upon the person," indicated that the Legislature intended exactly what it said, to prohibit a person at any time and in any place, within a city, village, or town, to have such a pistol in his possession without the permit required.

As bearing upon the intention of the Legislature, it is worthy of notice that said chapter 195 of the Laws of 1911, added to article 172 of the Penal Law an entirely new section, as follows:

"Sec. 1914. Sale of pistols, revolvers and other firearms. Every person selling a pistol, revolver or other firearm of a size which may be concealed upon the person, whether such seller is a retail dealer, pawnbroker or otherwise, shall keep a register in which shall be entered at the time of sale, the date of sale, name, age, occupation and residence of every purchaser of such a pistol, revolver or other firearm, together with the caliber, make, model, manufacturer's number or other mark of identification on such pistol, revolver or other firearm. Such person shall also, before delivering the same to the purchaser, require such purchaser to produce a permit for possessing or carrying the same as required by law, and shall also enter in such register the date of such permit, the number thereon, if any, and the name of the magistrate or other officer by whom the same was issued. Every person who shall fail to keep a register and to enter therein the facts required by this section, or who shall fail to exact the production of a permit to possess or carry such pistol, revolver or other firearm, if such permit is required by law, shall be guilty of a misdemeanor. Such register shall be open at all reasonable hours for the inspection of any peace officer. Every person becoming the lawful possessor of such a pistol, revolver or other firearm, who shall sell, give or transfer the same to another person without first notifying the police authorities, shall be guilty of a misdemeanor. This section shall not apply to wholesale dealers."

In People ex rel. Brown v. Woodruff, 32 N. Y. at page 364, the court said:

"It is always competent for the Legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain and obvious meaning of the act rather than to speculate upon what might have been the views of the Legislature in the emergency which may have arrived."

In Tompkins v. Hunter, 149 N. Y. 117, at page 122, 43 N. E. 532, at page 534, the court said:

"In construing statutes it is a well-established rule that resort must be had to the natural significance that the words imply, and, if they have a definite meaning which involes no absurdity or contradiction, there is no room for construction, and courts have no right to add or take away from that meaning. Newell v. People, 7 N. Y. 9; McCluskey v. Cromwell, 11 N. Y. 593; People ex rel. Brown v. Woodruff, 32 N. Y. 355, 364; Matter of Miller, 110 N. Y. 216, 222 [18 N. E. 139]. In Matter of Miller, 110 N. Y. 216, 18 N. E. 139, where it was contended that the reason and equity of a statute brought within its operation certain parties not mentioned in it, it was said: 'If that be so, it constitutes no reason for controlling its language, although it might seem that the Legislature would have provided for such a case had their attention been called to it.' It is not the duty of courts to disregard the plain words of a statute, even in favor of what may be termed an equitable construction."

In People v. Luhrs, 195 N. Y. 377, 89 N. E. 171, 25 L. R. A. (N. S.) 473, the court reiterated—

"the rule of construction that all the words of a statute are to be given effect if possible. It would be unreasonable to hold that the Legislature intended to prohibit the same act by two successive commands expressed in two successive clauses each of which makes that identical act a crime, when the statute permits the construction that the second clause was aimed at a different evil caused by a different act, the prohibition of which was necessary to furnish the complete protection which it was the object of the Legislature to afford."

Relator respondent, in his brief upon this appeal, repudiates the construction placed upon the act by the Special Term, and says:

"It seems fair to believe that the Legislature did mean to prohibit constructive possession in the home of the unlicensed home revolver. The only question that relator submits on this appeal is the constitutionality of the law for licensing the possession of the home revolver."

He says further:

That he "explicitly abandons all narrow and technical considerations by admitting that an unlicensed possession of a concealable weapon, committed by having a concealable revolver at home in a drawer or cabinet, is prohibited by the statute. By further admitting that constructive possession of a revolver in the house was prohibited by the statute as much as an actual physical possession. By further admitting that the prohibition relates to citizens of New York state, and that the Legislature had the home in mind as much as it had public places in mind when it made this prohibition. By admitting, further, that there is nothing obscure in the language of the statute in so far as an intention to prohibit the possession in the home of a revolver without a license therefor."

What he stands upon is the inherent and inalienable right to keep and bear arms, declared by the English Bill of Rights, inherited by the Colonies, recognized by the Bill of Rights as adopted in this state, and in the Constitutions of many other states, and alluded to in the second amendment to the Constitution of the United States, which provides:

"A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

[3] It is settled by a long line of authorities that the first 10 amendments to the Constitution of the United States are not operative on the

·states.  Barron v. Baltimore, 7 Pet. 243, 8 L. Ed. 672; Spies v. Illinois, 123 U. S. 131, 8 Sup. Ct. 22, 31 L. Ed. 80; Brown v. New Jersey, 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. Ed. 597; Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97.  In Robertson v. Baldwin, 165 U. S. 275, 17 Sup. Ct. 326, 41 L. Ed. 715, Brown, J., ·said:

"The law is perfectly well settled that the first 10 amendments to the Constitution, commonly known as the Bill of Rights, were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had from time immemorial been subject to certain well-recognized ·exceptions arising from the necessities of the case.  In incorporating these principles into the fundamental law there was no intention of disregarding the exceptions, which had continued to be recognized as if they had been formally .expressed.  Thus * * * the right of the people to keep and bear arms is ·not infringed by laws prohibiting the carrying of concealed weapons."

And it has been specifically held that the second amendment, here :relied upon, has no other effect than to restrict the powers of the national government, as said by the Chief Justice in United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588:

"The right of the people to keep and bear arms is not a right granted by the ·Constitution.  Neither is it in any way dependent upon that instrument."

See, also, Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615; Miller v. Texas, 153 U. S. 535, 14 Sup. Ct. 874, 38 L. Ed. 812; Andrews v. State, 3 Heisk. (50 Tenn.) 165, 8 Am. Rep. 8.

In People v. Persce, 204 N. Y. 397, 97 N. E. 877, in passing upon .section 1897 of the Penal Law prior to the amendment here under .consideration, the Court of Appeals said:

"Neither is there any constitutional provision securing the right to bear arms which prohibits legislation with reference to such weapons as are specifically ·before us for consideration.  The provision in the Constitution of the United States that the right of the people to keep and bear arms shall not be infringed is not designed to control legislation by the state.  Presser v. Illinois, 116 U. S. 252 [6 Sup. Ct. 580, 29 L. Ed. 615].  There is no provision in the state Constitution at least directly ·bearing on this subject but only in the statutory Bill of Rights."

[4] The Legislatures of nearly all the states have enacted statutes .making it an indictable offense to carry concealed weapons.  The general rule is stated in 5 Am. & Eng. Enc. of Law, 731:

"The provisions of the state statutes prohibiting the carrying of concealed weapons do not infringe any constitutional right of the citizen, but are merely police regulations forbidding the carrying weapons in a particular manner which is found dangerous to the safety and peace of the citizen."

In People v. De Morio, 123 App. Div. 665, 108 N. Y. Supp. 24, .the Appellate Division in the Second Department said:

"That part of section 410, Penal Code, pertinent to this case, provides: 'Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city or village of this state, any pistol, revolver, or other firearm, without a written license therefor, theretofore issued to him by a police magistrate of such city or village, * * * shall be guilty of a misde-.meanor.'  There is no dispute that the defendant was found outside of a bar

in a barroom with a revolver in his pocket. The appeal rests upon the contention that the defendant was on his own premises, and that any proof of intent was lacking. The statute does not contain any exception which permits the carrying while on one's own premises such a weapon concealed about the person. Wharton on Criminal Law (10th Ed.) § 1557, says: 'It is no defense that the weapons, when there is no exception in the statutes, were only carried about in the defendant's own house.' Bishop on Statutory Crimes (3d Ed.) § 789, says: 'Nor will it avail him that the carrying was on his own premises unless the statute has this exception'—citing cases. See, too, Harman v. State, 69 Ala. 248; Carroll v. State, 28 Ark. 99 [18 Am. Rep. 538]; Maupin v. State, 89 Tenn. 367 [17 S. W. 1038]. The mere fact that a man carries such a weapon in his own curtilage does not warrant the conclusion that he would not use it if occasion offered, and does not negative the conclusion that he did not have it under such circumstances for any wrongful, offensive, or defensive purposes. This part of the statute quoted does not contain any provision as to intent to use the same. Hence the intent may be presumed from the commission of the act."

[5] The provisions of the Bill of Rights, in this state, are embodied in the statutes, to wit, the Civil Rights Law (chapter 6, Consol. Laws 1909; chapter 14, Laws of 1909), and not in the Constitution. Nevertheless we fully recognize the proposition that the rights enumerated in the Bill of Rights were not created by such declaration. They are of such character as necessarily pertain to free men in a free state.

[6] But in order to appeal thereto for the purpose of declaring null and void an act of the Legislature, possessing all the lawmaking power of the people, it is necessary, before the act is declared null and void, that it should clearly be made to appear that it is in flat violation of some fundamental right of which the citizen may not be deprived by any power.

The right to bear arms is coupled with the statement why the right is preserved and protected, viz., that "a well-regulated militia is necessary to the security of a free state." If the Legislature had prohibited the keeping of arms, it would have been clearly beyond its power. As said by the Supreme Court of the United States in Presser v. Illinois, supra:

"It is undoubtedly true that all citizens capable of bearing arms constitute the reserve military force or reserve militia of the United States as well as of the states, and, in view of this prerogative of the general government as well as of its general powers, the states cannot, even laying the constitutional provision in question out of view, prohibit the people from keeping and bearing arms so as to deprive the United States of their rightful source for maintaining the public security and disable the people from performing their duty to the general government; but, as already stated, we think it clear that the sections under consideration do not have this effect."

In English v. State, 35 Tex. 473, 14 Am. Rep. 374, in referring to a statute prohibiting the carrying of certain specified deadly weapons, among others, pistols, daggers, slungshots, and bowie knives, the court said:

"To refer the deadly devices and instruments called in the statute 'deadly weapons' to the proper or necessary arms of a 'well-regulated militia' is simply ridiculous. No kind of travesty, however subtle or ingenious, could so misconstrue this provision of the Constitution of the United States as to make it cover and protect that pernicious vice, from which so many murders, assassinations, and deadly assaults have sprung, and which it was doubtless the in-

tention of the Legislature to punish and prohibit. The word 'arms,' in the connection we find it in the Constitution of the United States, refers to the arms of a militiaman or soldier, and the word is used in its military sense. The arms of the infantry soldier are the musket and bayonet; of cavalry and dragoons, the saber, holster pistols, and carbine; of the artillery, the field piece, siege gun, and mortar, with side arms."

Many other cases are to the same effect in interpreting the character of "arms" referred to and upholding the statutes against the carrying of concealed weapons.

[7] In the statute at bar the Legislature has not prohibited the keeping of arms. For the safety of the public, for the preservation of the public peace, in the exercise of the police power, the means employed being within its discretion and not in that of the courts, unless flagrantly in violation of constitutional provisions, the Legislature has passed a regulative, not a prohibitory, act. Legislation, which has for its object the promotion of the public welfare and safety, falls within the scope of the police power and must be submitted to even though it imposes restraints and burdens on the individual. The rights of the individual are subordinate to the welfare of the state. The only question that can then arise is whether the means employed are appropriate and reasonably necessary for the accomplishment of the purpose in view and are not unduly oppressive. People ex rel. Nechamous v. Warden, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718; People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788; Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263; Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725; Lemienx v. Young, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295.

There had been for many years upon the statute books a law against the carriage of concealed weapons. No court in this country, so far as I know, has ever declared such a law in violation of the Constitution or the Bill of Rights. It did not seem effective in preventing crimes of violence in this state. Of the same kind and character, but proceeding a step further with the regulatory legislation, the Legislature has now picked out one particular kind of arm, the handy, the usual, and the favorite weapon of the turbulent criminal class, and has said that in our organized communities, our cities, towns, and villages where the public peace is protected by the officers of organized government, the citizen may not have that particular kind of weapon without a permit, as it had already said that he might not carry it on his person without a permit. If he has it in his possession, he can readily stick it in his pocket when he goes abroad. In the attempt to prevent this particular kind of crime, the carrying of concealed weapons, the Legislature says that possessing a concealable pistol shall be a misdemeanor. It is an attempt to keep away temptation, opportunity. If the citizen carries it concealed on his person, it is a felony; if he has it in his possession handy and ready whenever the impulse shall come to violate the law, he shall be guilty of a misdemeanor, unless a permit is procured. The Legislature assumed that the obliga-

tion to procure the permit would be a most effective preventive to the possession of such weapon by the criminal classes.

[8-10] I am unable to persuade myself that such an act, regulating a right which is not denied, is not a legitimate exercise of the police power of the state. Whether it is a wise law, whether it will accomplish the purpose for which it was intended, whether it will check crimes of violence, is not the business of the court to inquire. If it fails to accomplish the purpose intended, if it creates more evil than good, if it is an annoyance and an incentive to blackmail, it can easily be repealed by the same lawmaking power which enacted it. The sole question for the court is, not whether the Legislature ought to have enacted the particular statute, not whether the particular statute was wise, but solely whether it was within the power of the Legislature to adopt; and, when a litigant comes into court to ask the court to declare a particular statute null and void as being beyond the power of the Legislature to pass, he must show precisely and conclusively that it is beyond such power.

"Whether the legislation was wise is not for us to consider. The motives actuating and the inducements held out to the Legislature are not the subject of inquiry by the courts, which are bound to assume the lawmaking power acted with a desire to promote the public good. Its enactments must stand, provided always that they do not contravene the Constitution, and the test of constitutionality is always one of power—nothing else." Bohmer v. Haffen, 161 N. Y. 390, 399, 55 N. E. 1047, 1048.

"This is not a question of substituting the judgment of the court for that of the Legislature. If the act is within the power of the state, it is valid, although the judgment of the court might be totally opposed to the enactment of such a law. But the question would still remain, is it within the police power of the state, and that question must be answered by the court." Lochner v. New York, 198 U. S. 45, 56, 25 Sup. Ct. 539, 543 (49 L. Ed. 937, 3 Ann. Cas. 1133).

It should be borne in mind that this appeal is in a habeas corpus proceeding, brought by the relator solely to test the validity of the law; that he concedes the possession in his house of a loaded revolver, and that such possession and such weapon came within the purview of the law; that it has been held under the former law that the carrying of a concealed weapon upon one's person upon his own premises was prohibited by said law (People v. De Morio, supra), and that the Court of Appeals, in People v. Persce, supra, has held that a theoretical, technical and fanciful construction was not to be put upon the law, saying of the former statute:

"It clearly should not be construed to mean a possession, for instance, such as would theoretically and technically follow from the legal ownership of a weapon in a collection of curious and interesting objects."

As the former law prohibited the carrying concealed a revolver upon the person, even upon one's own premises, the present law is but a step further and prohibits the possession of a concealable revolver upon the premises without a permit.

As I think that the statute is merely along the line of regulation, and fairly within the undoubted police power of the Legislature, I think it must be sustained by the courts.

It follows therefore that the order appealed from should be reversed, and that the writ of habeas corpus should be quashed and the relator remanded.

LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). I am unable to concur in the construction given by my Brother CLARKE to section 1897 of the Penal Law as amended by chapter 195 of the Laws of 1911. I fully recognize the useful rules of construction compiled by him from numerous reported cases; but there is one other rule, to which he does not refer, but which is well settled, which is that every statute shall be given a reasonable construction, where its language is susceptible of more than one construction, and, in determining what is a reasonable construction, regard is to be had not only to the language, but also to the evil sought to be guarded against and to the nature of the remedy provided. This is especially true of statutes like the one now under consideration, which is highly penal, creates a crime out of that which was formerly lawful and relies for its authority upon the existence of that somewhat vague and shadowy right known as the "police power."

It is entirely clear, and is not disputed, that prior to the amendment of 1911 it was not unlawful for a resident over 16 years of age to have and keep in his house, but not on his person, a pistol, and no provision was made for a license for such possession. The purpose of the act was to prevent the use or the temptation to use pistols hastily, improperly, or unnecessarily. The opportunity and temptation so to use a pistol is undoubtedly greater when such a weapon is in the physical possession of a person than when it is merely in his constructive possession, and the evident purpose of the act can be completely carried out without giving a forced meaning to the word "possession" as used in the amendment. That the Legislature intended that its prohibition should be confined to pistols carried on the person, and thus in the physical possession of the owner, seems to me to be strongly indicated by the limitation of the articles prohibited to pistols "of a size to be carried upon the person." Under the construction now sought to be given to the act it would be perfectly legal to keep at one's bedside, or in a cabinet, a blunderbuss or a horse pistol, or whatever modern weapons correspond in size to those ancient arms, but unlawful to so keep their smaller relative of a size that might be concealed upon the person. And when we come to consider the size of pistols thus forbidden, it is clear that it must be considered with reference to a clothed, and not an unclothed, person, for it is difficult to conceive of a lethal weapon so small that it could be concealed upon the person otherwise than by clothing.

In determining the construction to be given to a particular clause in a section of the act we should consider the whole section, and the sense in which similar words are used. The purpose of the whole section is clearly to provide, so far as legislation will be effective for said purpose, against the carrying of pistols by criminals and other persons who may, it was feared, make an improper use of them. It was not intend-

ed to absolutely and entirely prohibit such carrying, because provision is made for the issue of licenses to persons approved by certain magistrates.

Of course, no such prohibition can be completely effective with respect to the class of persons against whom it is principally directed, and probably no one ever thought it would be; but the best the Legislature deemed it possible to do was to enact the prohibition and attach a heavy penalty for its violation. The practical result of the construction now sought to be given to the act will be that the professional criminal will generally violate the act and take his chances of discovery and punishment, while the law-abiding citizen will be obliged to disarm himself of his only effective protection against the predatory classes. The best police force in the world cannot always, or even usually, anticipate and prevent crimes of violence. They can and usually do preserve peace and order, and sometimes discover the perpetrators of crimes; but they can seldom prevent. A law-abiding citizen in his walks abroad can usually avoid dangerous localities, and if he is compelled to traverse them can obtain a license to carry a defensive weapon; but in his own house, wherever it may be situated, he can never be entirely secure against the midnight marauder. For protection there he is compelled to rely upon himself and upon such means of defense as he may have at hand. The construction now sought to be given to the act would deprive him of such protection.

I am therefore satisfied that the true construction of the act, and one which does no violence to its language, is that adopted by the learned justice at Special Term, and which accords well with the reasonable construction given to section 1897 of the Penal Law in People v. Persce, 204 N. Y. 397, 97 N. E. 877.

The order appealed from should be affirmed.

INGRAHAM, P. J., concurs.