## HEATON *v.* STATE.*

## (*Knoxville.* September Term, 1914.)

1. WEAPONS. Carrying weapons. "Carry."

A person who to protect himself against an unlawful assault in his office and sleeping apartment, under circumstances entitling him to exercise the right of self-defense, picked up a pistol and fired two shots, whereupon bystanders took the pistol away from him, did not "carry" the pistol within Shannon's Code, sec. 6641, making it unlawful for any person to carry publicly or privately any pistol except an army or navy pistol. (*Post, pp.* 165-168.)

2. WEAPONS. Carrying weapons. Manner of carrying.

Under Shannon's Code, sec. 6641, providing that it shall be unlawful to carry publicly or privately any dirk, razor concealed about the person, sword cane, etc., belt or pocket pistol, revolver, or any kind of pistol except the army or navy pistol usually used in warfare, which shall be carried openly in the hand, it is not necessary to a conviction that the weapon be concealed about the person, unless it be a razor, or an army or navy pistol usually used in warfare. (*Post, pp.* 168-170.)

Code cited and construed: Sec. 6641 (S.).

Cases cited and approved: Kendall v. State, 118 Tenn., 158; Coffee v. State, 72 Tenn., 246.

Cases cited and distinguished: Moorefield v. State, 73 Tenn., 348; Page v. State, 50 Tenn., 198.

---

*As to what manner of carrying of weapon violates statute against carrying concealed weapons, see note in 23 L. R. A. (N. S.), 173.

3. **WEAPONS.   Carrying weapons.   Purpose and place of carrying pistol.**

It is not a defense to a charge of carrying a pistol under Shannon's Code, sec. 6641, that accused armed himself solely for the purpose of self-defense, or that he carried the pistol only on his own farm or premises.   (*Post, pp.* 168-170.)

Case cited and distinguished:  Osborne v. State, 115 Tenn., 718.

4. **WEAPONS.   Right to own pistol.**

A pistol is property, and a person is not prohibited from owning one, notwithstanding Shannon's Code, sec. 6650, making it a misdemeanor to sell, offer to sell, or bring into the State for the purpose of selling, giving away, or otherwise disposing of, pistols of any kind other than army or navy pistols.   (*Post, pp.* 170-173.)

Code cited and construed:  Secs. 6650, 7195 (S.).

Cases cited and approved:  Maupin v. State, 89 Tenn., 367; State v. Parker, 81 Tenn., 225.

FROM GREENE.

Appeal from the Circuit Court of Greene County.— DANA HARMON, Judge.

SUSONG & BIDDLE, for appellant.

Assistant Attorney-General SWIGGART, for the State.

MR. JUSTICE FAW delivered the opinion of the Court.

The indictment in this case charges that Bob Heaton "unlawfully did carry a pistol, against the peace and dignity of the State." Heaton pleaded not guilty, and was tried and found guilty by a jury, whereupon the trial judge imposed upon him a fine of $50 and

Heaton v. State.

costs of the cause, and adjudged that he undergo imprisonment in the county jail of Greene county for a period of six months. His motion for a new trial was overruled, and he has appealed to this court and assigned errors.

In this court plaintiff in error insists that upon the uncontroverted facts he is not guilty of carrying arms within the sense of the statute, or, in other words, that the evidence preponderates against the verdict of the jury.

The case was tried upon an agreed statement of facts, which is as follows:

"The defendant, R. T. Heaton, is a lumber man, engaged in business in Greene county, Tennessee, having a lumber manufacturing plant and various men in his employ. The defendant owned no pistol and had no weapon of his own. On the morning of the difficulty, a boy, who was in his employ, came into his office intoxicated, with a pistol in his possession, and Heaton, fearing that the boy might get into trouble, took the pistol and dropped it in a laundry bag hanging on the side wall of his office, intending to leave it there until the boy sobered up and then turn it over to him. On the evening of that day a difficulty occurred between Eb. Cutshall and the defendant. Cutshall had a contract for logging for Heaton and had quit work, stopping Heaton's mill and stopping his other hands from work. Cutshall came into Heaton's office where some of the other hands were, such other hands having come there for the purpose of asking Heaton whether they

should return to work on the morrow.  At this point, Eb. Cutshall passed the office with his father, his brother, and his cousin.  Cutshall was a very strong and powerful mountain man, being six feet and two inches tall, and weighing about 190 pounds.  He came into Heaton's office, and Heaton asked him if he was going to tram logs to the mill on the following day; that the hands were there and wanted to know whether they should come back to work.  Cutshall refused to give any definite answer to this question, and a controversy arose between himself and Heaton, in which Cutshall called Heaton a damned liar and used other opprobrious epithets.  Heaton rose and told him to leave his office, whereupon Cutshall seized Heaton by both arms and jerked him out of the house and threw him across the road and across the coupling pole of a wagon.  He went over to Heaton and jerked him up and again knocked him down.  Heaton attempted to get back into his office, and Cutshall again struck him and knocked him down by the side of the door.  Some of the bystanders were trying to get Cutshall to stop, and Heaton got into the door of the office and ran to the laundry bag and snatched out the pistol, which he had taken from the boy that morning and placed in the bag, and turned and came toward the door of his office. When he got near the door, he saw Cutshall coming into the office door, cursing and uttering threats, and just as he, Cutshall, was stepping in the door Heaton fired two shots at Cutshall.  The first shot inflicted a slight flesh wound in Cutshall's arm.  As the second

shot was fired, one of the bystanders struck down the pistol and the bullet entered the floor. Just as Cutshall was entering the house, and immediately before Heaton fired, the situation was sufficiently threatening that one of the hands, John Payne, who was one of the bystanders, said to Heaton that they were bunching on him, and that he had better shoot. At that time, Cutshall's father and brother were near to and immediately behind him, and the brother had an open knife in his hand. Defendant, Heaton, was very much intoxicated at that time.

"After the second shot, some of the bystanders took the pistol away from Heaton, and thereupon the brother of Eb. Cutshall forced his way into the office with an open knife, and attempted to assault Heaton with it, but was prevented by some of those present.

"All the Cutshalls were proven to be fighting characters and dangerous men. Heaton did not conceal the pistol or have it other than open in his hand; but it was not an army or navy pistol, being a cheap 32 caliber revolver. The circumstances of the affray happened as rapidly as possible, and Heaton had the pistol no longer than it was possible for him to get it out and turn to the door and fire the shots.

"Cutshall indicted Heaton for alleged felonious assault, which was tried before the pistol case, and the jury held that the shooting was in self-defense, and that defendant, Heaton, was not guilty of any offense under the indictment for felonious assault.

"It was agreed upon the trial before the jury in this case for carrying arms that the shooting by Heaton was in self-defense and justified. For this reason fuller statement of the facts of the difficulty is not made.

"Heaton's office was also his sleeping apartment, and it was one room of a boarding house belonging to Heaton, where certain parties engaged about the mill boarded, but none of the Cutshalls boarded there. Said office was about twelve by eighteen feet. This occurred in Greene county and within twelve months before the finding of the indictment."

The question for determination is whether, upon the facts, the plaintiff in error is guilty of unlawfully carrying a pistol within the meaning of our statute (Shannon's Code 6641), which is as follows:

"It shall not be lawful for any person to carry, publicly or privately, any dirk, razor concealed about his person, sword cane, loaded cane, slung shot, or brass knucks, Spanish stiletto, belt or pocket pistol, revolver, or any kind of pistol, except the army or navy pistol, usually used in warfare, which shall be carried openly in the hand."

This court has heretofore held that the object of the statute above quoted is "to prevent carrying a pistol with a view of being armed and ready for offense or defense in case of conflict with a citizen." *Moorefield v. State,* 5 Lea, 348.

It is not necessary to a conviction under this statute that the weapon carried be concealed about the

person, except it be a razor, or an army or navy pistol usually used in warfare. *Kendall* v. *State*, 118 Tenn., 158, 101 S. W., 189, 121 Am. St. Rep., 994, 11 Ann. Cas., 1104. And it is no defense that the accused has armed himself solely for the purpose of self-defense. *Coffee* v. *State*, 4 Lea., 246.

The statute makes no exception in favor of the right of carrying pistols upon one's own farm or premises, or in fact in any place. The prohibition is against carrying "publicly or privately." The precise question for solution in this case is, Did the plaintiff in error "carry" the pistol, within the meaning and intent of the statute? In the case of *Page* v. *State*, 3 Heisk., 198-201, note, this court, speaking with reference to the statute here under consideration, said, viz.:

"But we are far from understanding the legislature as intending to make every act of carrying one of these weapons criminal. Under the constitution, every man has a right to own and keep these weapons, nor is this right interfered with by the prohibition against 'carrying' them, in the sense in which the legislature uses the word. To constitute the carrying criminal, the intent with which it is carried must be that of going armed, or being armed, or wearing it for the purposes of being armed. In the case before us, the intent with which Page was carrying his pistol was fully developed. He was carrying it that he might be armed, as was shown by his threatened assault upon the prosecutor. It would probably be difficult to enumerate all the instances in which one of these weapons could be car-

ried innocently, and without criminality. It is sufficient here to say that, without the intent or purpose of being or going armed, the offense described in this statute cannot be committed."

A pistol is property, notwithstanding the statute (Shannon's Code, 6650) making it a misdemeanor for any person to sell, or offer to sell, or bring into the State for the purpose of selling, giving away, or otherdise disposing of, pistols of any kind other than army or navy pistols. Our statutes do not prohibit one from owning a pistol.

"The owner of a pistol, while he cannot carry or sell it in Tennessee, may keep it in his residence or place of business *for his protection.*" *Osborne* v. *State,* 115 Tenn., 718, 92 S. W., 853, 5 Ann. Cas., 797.

If the plaintiff in error had the right to own a pistol, and to keep it in his residence or place of business "for his protection," as held by this court in *Osborne* v. *State,* supra, then it must be true that he could lawfully use it, in his residence or place of business, for his protection against a violent and deadly assault by a lawless intruder. To hold otherwise would be to say that he had a legal right which the law did not permit him to exercise; and this would be to announce a legal absurdity.

We do not wish to be understood as holding that plaintiff in error is to be excused merely because he used the pistol in self-defense. Such is not the law. *Coffee* v. *State,* supra. Nor do we mean to hold that one might not be guilty of carrying a pistol in his own

house. *Maupin* v. *State,* 89 Tenn., 367, 17 S. W., 1038. We think, however, that, under the admitted facts of this case, plaintiff in error did not transcend the limits of his lawful right to *use* the pistol for his *protection* in his own house. He did not "carry" the pistol within the contemplation of the statute, and was not guilty of the charge contained in the indictment.

An assignment of error is based upon the proposition that there was a "merger" of the offense of carrying a pistol into the alleged felonious assault for which plaintiff in error was tried, and of which he was acquitted, and that, for that reason, he could not be convicted in the present case; and, in support of this assignment, counsel rely upon the case of *State* v. *Parker,* 13 Lea, 225.

*Parker's Case* was an appeal from a conviction for carrying a pistol. It appeared that he had shot an officer who was pursuing him, and had been indicted for a felonious assault upon the officer. It was insisted by Parker's counsel that the carrying of the pistol was part and parcel of the felonious assault, and was merged in it, and that Parker, therefore, could not be convicted of carrying a pistol unlawfully. This court found that in that case that Parker had the pistol when the officer whom he shot found him at the house of one Wilcox, and that he carried the pistol with him when he fled to the bushes where he concealed himself and where he shot the officer, who pursued him from Wilcox's house. Hence the court held the offense of carrying the pistol was complete before he did the shooting

with it.  It is true the court said in the course of the opinion, that *"although he (Parker) could not be convicted for a separate offense for having the pistol at the time he did the shooting,* yet he might be properly convicted for the previous carrying before he was discovered and confronted by the officer whom he shot." It is manifest that, in view of the finding of the court before stated, the statement that "he could not be convicted for a separate offense for having the pistol at the time he did the shooting" was not necessary to a decision of the case, and was a mere *dictum.*

The doctrine of merger, at the common law, is stated in Wharton's Criminal Law (11th Ed.), vol. 1, sec. 39, as follows:

"Merger is said to exist when a lesser offense is absorbed in a greater, but in criminal practice the only case in which such absorption is claimed to be operative is when a misdemeanor is an ingredient of a felony, in which case the older authorities maintain that the trial must be exclusively for the felony, and that the defendant cannot, under an indictment for felony, be convicted of misdemeanor."

The doctrine of merger, in relation to criminal offenses, as it existed at the common law, is practically abolished, or at least greatly limited, in our practice. At the common law there was no merger except where the lesser offense was an ingredient of the greater.  It is provided by Shannon's Code, sec. 7195, that:

"Upon an indictment for any offense consisting of different degrees, the jury may find the defendant not

guilty of the degree charged in the indictment and guilty of any degree inferior thereto, or of an attempt to commit the offense; and the defendant may also be found guilty of any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor.''

But it has been held in other States that the unlawful carrying of a pistol is not a part and parcel, in other words, not an ''ingredient'' of a felonious assault, or felonious shooting, but is an offense of a different nature, and not one merely differing in degree. See note collating cases, 31 L. R. A. (N. S.), page 732.

However, the decision of this latter question is not necessary in the present case, and we do not decide it, because the finding that plaintiff in error was not guilty, upon the facts, of carrying a pistol unlawfully is determinative of the case.

It results that the judgment of the court below must be reversed, and the verdict set aside, and we recommend that the attorney-general enter a *nolle prosequi.*