THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY SERRANO, Respondent.

First Department, December 6, 1979

## APPEARANCES OF COUNSEL

*Benjamin H. Green* of counsel *(Robert M. Pitler* with him on the brief *(Robert M. Morgenthau, District Attorney),* for appellant.

*Salvatore Canonico* for respondent.

## OPINION OF THE COURT

BLOOM, J.

On August 2, 1978, defendant was arrested in the hallway of a house on the lower east side. Initially, the contemplated charges were limited to criminal possession of a controlled substance in the seventh degree, criminally using drug para-

phernalia in the second degree, criminally possessing a hypodermic instrument and unlawful possession of marihuana. However, a search of his vehicle which was parked nearby disclosed possession of a loaded firearm. Accordingly, when the indictment was handed down, it included as the first count a charge of criminal possession of a weapon in the third degree.

Thereafter, defendant moved, among other things, to dismiss the weapons count upon the ground that he was authorized to possess the weapon in accordance with a license issued to him by the Police Department of the City of New York. In fact, a "premises license" had been issued to defendant on November 18, 1977, which apparently had been renewed to cover the period January 1, 1978 to December 31, 1978. The premises described in the application for the permit was 632 Grand Street, Brooklyn, New York, which was the location of defendant's insurance brokerage business. Defendant contends that section 265.20 (subd a, par 3) of the Penal Law exempts "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00, provided, that such a license shall not preclude a conviction for the offense defined in subdivision three of section 265.01" (which makes it a crime to knowingly possess "a rifle, shotgun or firearm in or upon a building or grounds, used for educational purposes, of any school, college or university, except the forestry lands, wherever located, owned and maintained by the State University of New York college of environmental science and forestry, without the written authorization of such educational institution"). He asserts that section 265.20 (subd a, par 3) by specifically permitting prosecution for violation of subdivision (3) of section 265.01 is indicative of a legislative intent to preclude prosecution for all other weapons charges. Hence, he claims that since he possessed a license for the pistol or revolver here involved, he may not be prosecuted under section 265.02.

Criminal Term, relying on his decision in *People v Parker* (91 Misc 2d 363) granted the motion and dismissed the weapons count. The People have appealed from this determination as they did from the holding of Criminal Term in *Parker.*

In *Parker* we reversed (70 AD2d 387). However, we find the fact pattern here presented is substantially different from that presented by *Parker.* Accordingly, we affirm but for reasons other than those relied upon by Criminal Term.

Section 400.00 of the Penal Law, which is the omnibus

provision governing the issuance of a license for a pistol or revolver provides in subdivision 2 thereof for different categories of licenses. These include "to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (e) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (f) have, possess, collect and carry antique pistols". Subdivision 15 of section 400.00 provides that violation of *any* provision of the licensing statute shall constitute a class A misdemeanor.

In *Parker* defendant was indicted for criminal possession in the second degree, i.e., possession of a weapon with intent to use it unlawfully against another. The indictment and other papers submitted to us disclosed that *Parker,* who possessed a license to have and possess a pistol or revolver in his dwelling, got into an argument on the street with his girlfriend. He went to his home, took the weapon and returned to the street where he threatened her with it. Our consideration of the case resulted in four separate opinions. Justice SILVERMAN, who wrote the plurality opinion and with whom the Presiding Justice concurred, noted "that the exemption [contained in § 265.20] simply does not apply when the possession is in violation of the limitations and conditions of the license. As to such possession, the possessor is in legal effect not 'a person to whom a license therefor has been issued' ". (70 AD2d 387, 389.) Justice MARKEWICH who concurred, noted that the main thrust of the charge was an intent to commit an assault. Had the assault, in fact, occurred, the defendant could not escape prosecution therefor simply because the weapon was possessed under a valid license "to have and possess in his dwelling by a householder". (Penal Law, § 400.00, subd 2, par [a].) I concurred on the limited ground that defendant was charged with

possession with intent to use the weapon unlawfully against another. The added ingredient of intent to use unlawfully against another was sufficient, I felt, to subject the defendant to prosecution under the indictment. Justice BIRNS dissented, holding that the exemption contained in section 265.20 (subd a, par 3) was sufficiently broad to include *Parker* within its embrace. Any correction of the situation, he asserted, must be legislative and not judicial.

Here, however, we are confronted with the charge of naked possession. All that is asserted is that the weapon for which, concededly, defendant held a license "to have and possess in his place of business by a merchant or storekeeper" (Penal Law, § 400.00, subd 2, par [b]) was possessed in a place other than that specified in the license. In giving sweep to what is conceived to be legislative intent, we must be careful not to legislate. In that connection it would be well to bear in mind the admonition of Mr. Justice HOLMES that "judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions". *(Southern Pacific Co. v Jensen,* 244 US 205, 221.) Here, the legislative intent is manifest by its inclusion of subdivision 15 in section 400.00 of the Penal Law. That subdivision denominates the act here sought to be prosecuted as a class A misdemeanor and not the class D felony specified in section 265.02. We are bound thereby.

Given the disparity in fact patterns between this case and *Parker* and the differences in opinion among those comprising the majority in that case, we do not think that the disparate conclusions reached tend to undermine the principle of institutional stability (compare *People v Davis,* 46 NY2d 780 with *People v Murray,* 40 NY2d 327).

Accordingly, the order of Criminal Term (MILONAS, J.), rendered February 8, 1979, should be affirmed.

BIRNS, J. (concurring). I concur for the reasons stated in my dissenting opinion in *People v Parker* (70 AD2d 387).

LUPIANO, J. (dissenting). Defendant was charged with the following five counts: (1) criminal possession of a weapon in the third degree, (2) criminal possession of a controlled substance in the seventh degree, (3) criminally using drug paraphernalia in the second degree, (4) criminally possessing a hypodermic instrument, and (5) unlawful possession of marihuana. This appeal concerns the propriety of Trial Term's

dismissal of the first count of the indictment on defendant's motion prior to trial. The Trial Term determined to grant the motion "in accordance with [its] decision in *People v Parker,* 91 Misc 2d 363."

Relative to the first count, the indictment reads: "The defendant, in the County of New York, City of New York, on or about August 2, 1978, knowingly and unlawfully possessed a loaded firearm, to wit, a .38 caliber Walther automatic, loaded with ammunition, *said possession not being in the defendant's home or place of business"* (emphasis supplied). Study of this record discloses the following: Defendant admits ownership of the weapon and that it was found in his possession. However, he claims that he had a valid license to carry the pistol which was issued on or about January 1, 1978 (Permit No. P 201493) pursuant to subdivision 2 of section 400.00 of the Penal Law. As a consequence, defendant claims exemption for prosecution for possession of the weapon pursuant to section 265.20 (subd a, par 3) of the Penal Law which states that section 265.02 of the Penal Law entitled "Criminal possession of a weapon in the third degree" shall not apply to "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00; provided that such a license shall not preclude a conviction for the offense defined in subdivision three of section 265.01." For informational purposes, section 265.01 of the Penal Law entitled "Criminal possession of a weapon in the fourth degree" declares in subdivision (3) that a person is guilty of such crime when "[h]e knowingly has in his possession a * * * firearm in or upon a building or grounds, used for educational purposes, of any school, college or university, except the forestry lands * * * owned and maintained by the State University of New York college of environmental science and forestry, without the written authorization of such educational institution".

Defendant explicitly relies on *People v Parker* (91 Misc 2d 363). In that case, a defendant indicted for criminal possession of a pistol in the second degree* advanced the argument that although his license was restrictive, i.e., it only entitled him to possess this pistol in his home, the fact that he possessed the pistol while not in his home (which loaded weapon he al-

---

* Section 265.03 of the Penal Law states: "[a] person is guilty of criminal possession of a weapon in the second degree when he possesses a * * * loaded firearm *with intent to use the same unlawfully* against another" (emphasis supplied).

legedly pointed at complainant and her son) may not serve as a predicate for prosecution for such possession pursuant to section 265.03 of the Penal Law by virtue of the exception delineated in section 265.20 (subd a, par 3) of the Penal Law. The argument by the People, pertinent to this appeal, presented in *People v Parker (supra)* to the effect that there are various distinguishable kinds of licenses authorized by subdivision 2 of section 400.00 of the Penal Law and that inasmuch as Parker had a restrictive license authorizing possession in his home, he did not have a license to carry a loaded pistol in a public place and was, therefore, "unlicensed" with regard to such possession, was rejected by the court. In construing section 265.20 (subd a, par 3) of the Penal Law, the court in *Parker* concluded that it establishes a *blanket* exemption, "since it neither differentiates between types of licenses nor between degrees of possession, including those, such as section 265.03 of the Penal Law, which require unlawful intent as an element of the crime" (91 Misc 2d, at pp 364-365).

*People v Parker (supra)* has been reversed by this court (70 AD2d 387) with one Justice dissenting and two Justices concurring in result in separate opinions. The opinion of Justice SILVERMAN aptly observes: "the fair meaning and application of section 265.20 (subd a, par 3), which provides that certain sections, including section 265.03, shall not apply to possession 'by a person to whom a license therefor has been issued as provided under section 400.00,' is that that exemption relates to a weapon carried within the limitations and conditions of the license issued under section 400.00 and not to possession of a weapon carried in violation of those limitations and conditions. *As to such unauthorized possession, no license 'therefor' has been issued under section 400.00"* (emphasis supplied). The two concurring Justices join in the result because the defendant in *Parker* was charged with more than the most basic form of simple possession of a weapon. For one concurring Justice the critical fact is that Parker was charged with possession *with intent* to use the same unlawfully against another, and for the other concurring Justice the critical fact is that Parker was charged *with intent* to commit an assault. What is crystal clear is that a consensus exists among a majority of the Justices of this court in *Parker* that insofar as statutory construction is concerned, a statute must be read in such a way as to make sense. This simple and common sense dictum is pivotal, especially as it may be

argued that the instant matter is distinguishable from *Parker* in that no *intent* to commit an assault with the weapon and no *intent* to use the same unlawfully against another is alleged.

A firearm, be it pistol or revolver, is an inanimate object. It is the use of such object which is critical. This use is controlled by law by virtue of statutory enactments relating to incipient use, that is, the right to mere possession keyed to the locus of that possession, i.e., whether restricted to a dwelling or a place of business, or whether such possession may extend to the right to carry the weapon and under what circumstances. This incipient use is regulated primarily by the licensing provisions of the Penal Law (art 400). The potential inherent in such incipient use as actualized or realized in a given set of circumstances is governed primarily by the provisions of the Penal Law relating to the degree of criminal possession in the Penal Law (art 265). The interrelation of both aspects of use is manifest and subject to application of common sense. To distort that interrelation by hypertechnical statutory construction or resort to abstract reasoning not founded on common sense is to do a disservice to the legislative wisdom expressed in articles 265 and 400 of the Penal Law.

Prefatory to analyzing these statutory enactments as they relate to defendant herein, the following well-recognized principles of statutory construction and interpretation are noted: "All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, subd a). "Conflicting intentions in the same statute are never to be supposed or so regarded, unless forced on the court by unambiguous language" (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, subd b; see, also, *Long Is. Trust Co. v Porta Aluminum Corp.,* 44 AD2d 118, 122-123). "[W]here the Legislature enacts a specific provision directed at a particular class, and a more general provision in the same statute which might appear to encompass that class, the specific provision will be applied *(People ex rel. Davidson v Gilon,* 126 NY 147, 156; McKinney's Cons Law of NY, Book 1, Statutes, § 238)" *(People v Marrero,* 71 AD2d 346, 349, 350).

Study of section 400.00 of the Penal Law discloses that it is

entitled "Licenses to carry, possess, repair and dispose of firearms." Thus, different types of licenses are clearly indicated, which fact is amplified by subdivision 2 of section 400.00 of the Penal Law which relates, *inter alia,* the following types of licenses: (1) a license for a gunsmith, (2) a license for a dealer in firearms, (3) a license to have and possess a pistol or revolver in his dwelling for a householder, (4) a license to have and possess a pistol or revolver in his place of business for a merchant or storekeeper, (5) a messenger employed by a banking institution or express company while so employed, (6) a license to have and carry concealed a pistol or revolver for a regular employee of a State institution, or of any county, city, town or village, under control of a correction commissioner, warden, superintendent or head keeper of any State prison, penitentiary, county jail, workhouse or other institution for the detention of persons, while so employed, provided application is made therefor by such commissioner, warden, superintendent or head keeper. Thus it is perceived that the licensing statute envisions separate and particular classes of citizens, e.g., the householder, the merchant, the gunsmith, the gun dealer, the prison guard, etc. In accordance with the needs and circumstances of a citizen, a license may issue under section 400.00 of the Penal Law *appropriate* to that citizen. Patently, there is no single generic or blanket license of which any citizen may seek to avail himself. We conclude, therefore, that incipient use of a firearm is regulated initially by an acute regard for the classification and circumstances specially or particularly attributable to an individual applicant for one of the many types of licenses embraced within section 400.00 of the Penal Law. A violation by any person of the incipient use aspect of the State's gun control policy as enunciated by section 400.00 of the Penal Law is viewed as a class A misdemeanor (Penal Law, § 400.00, subd 15).

Attention is now focused on the actual or realized use of a firearm under article 265 of the Penal Law entitled "Firearms and Other Dangerous Weapons." The Legislature again evinces an acute awareness that actual use of a firearm exists not as an abstract but in concrete circumstances relevant to the particular citizen possessing the weapon. Thus in enacting the exemption statute (Penal Law, § 265.20), the Legislature keyed its application to distinct, particular classes of persons (see *People v Marrero,* 71 AD2d 346, *supra).* Pertinent to the

interrelation between the incipient use and actual use, section 265.20 (subd a, par 3) of the Penal Law provides exemption for criminal possession of a weapon when that possession is "by a person to whom a license *therefor* has been issued *as provided under* section 400.00" (emphasis supplied). Note we are here concerned with and this analysis embraces the concept of possession as a use unrelated to the issue of criminal intent (cf. *People v Parker,* 70 AD2d 387, *supra).*

The Legislature did not indorse a blanket exemption under section 265.20 (subd a, par 3) of the Penal Law, i.e., it is not the mere fact that a license may have issued to a defendant pursuant to section 400.00, rather it is the incorporation of the classifications of section 400.00 into the exemption statute which is envisioned. This conclusion is supported by terms employed in section 265.20 (subd a, par 3) of the Penal Law. A person must have a particular license for the particular weapon as provided under the licensing statute itself, and failure to have such license may subject him to a criminal possession charge despite the fact that he has a license for the weapon, but a license not suitable for that possession.

Thus, a defendant in his capacity as a householder having complied with section 400.00 of the Penal Law and obtained a license thereunder to have and possess (a form of use) a pistol or revolver in his dwelling, may not extend such use to that of have and carry beyond the confines of his dwelling. As to the latter incipient use, not having obtained a license for same, such defendant in possessing the pistol or revolver beyond the restrictions of his particular license has transgressed the gun control policy of the State. A fair reading of the statutory provisions at issue here impels the conclusion that when a person (as the defendant) acts beyond the scope of his license, he is, with respect to that conduct, in the position of an unlicensed individual and cannot rely on that license for protection against prosecution. Having created categories of licenses, limiting the scope of lawful possession of a weapon, there is nothing to indicate that in incorporating section 400.00 into the exemption statute by virtue of section 265.20 (subd a, par 3), the Legislature intended to disregard the distinctions it created between the different types of licenses. The particular classifications enumerated by the Legislature, articulated both in articles 400 and 265 of the Penal Law enhance this conclusion.

To conclude that section 265.20 (subd a, par 3) of the Penal

Law provides blanket exemption from prosecution regardless of the terms of the license, would render meaningless the provisions of section 400.00 of the Penal Law defining the types of licenses to be issued and their validity. There would be no purpose in establishing such distinctions between the types of licenses and defining their validity, if the issuance of any type of license conferred blanket immunity from prosecution regardless of the scope of lawful possession conferred by the license and the conduct of the possessor. In effect, the court would enact through case law a single generic blanket license to use firearms. The statutory scheme created by the New York Legislature clearly demonstrates that it was the Legislature's purpose to *closely* control the possession of handguns. As a general proposition, not only was the possession of pistols made criminal, except where a license had been obtained, but, even amongst those who are licensed, the Legislature further provided for strict control of the use of firearms by establishing different types of licenses which permit possession of a firearm for limited purposes or in limited geographic areas. The public policy of the State relevant to gun control may not be cavalierly frustrated, especially when exemplified in unambiguous statutory enactments.

Possession of a dangerous weapon under a permit issued by constituted authority, whether viewed as a right or a privilege, imposes the counterbalancing duty not to abuse such right or privilege. He who possesses that right or privilege should take the consequences resulting from its abuse. Note is also taken of the fact that under CPL 140.50, New York's "stop and frisk" statute, " 'criminal activity' means any felony, or any offense listed in section 552 of the Code of Criminal Procedure, and would include the unlicensed carrying of a loaded pistol or revolver. (Penal Law, § 265.05, subd. 2; § 265.20, subd. a, par. 3; § 400.00, subd. 2, par. [e]; see, also, *People v. Rosemond*, 26 N Y 2d 101, 103-104)" *(People v Moore*, 32 NY2d 67, 69, n 3).

To reiterate: the utilization of the term "therefor" in section 265.20 (subd a, par 3) of the Penal Law may not be viewed as excess verbiage, but should be given meaning in light of the evil aimed at and sought to be controlled. Section 265.20 of the Penal Law as it relates to the instant matter would exempt defendant from the application of section 265.02 of the Penal Law which characterizes his possession of the pistol *as found to have occurred* on August 2, 1978, as criminal, pro-

vided such "possession of a pistol" is authorized by a license "therefor," i.e., a license covering the *actual* possession (so found) has issued. "In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves *no absurdity* or contradiction, there is no room for construction and courts have no right to add to or *take away from* that meaning" *(Tompkins v Hunter,* 149 NY 117, 122-123; emphasis supplied). Instructive of the common sense approach demanded in the application and construction of gun control law is *State v Sima* (142 NJ Super 187). In that case, a New Jersey appellate court confronted an issue, raised by defendant to whom a restricted license had issued, that although he was charged with possessing a pistol without having a permit therefor because he was found to have possession beyond the restrictions of that permit, he nevertheless, in law, was exempt from the charge because a license, albeit restricted, had issued. His argument was predicated on the fact that the New Jersey statute did not spell out any specific authority for placing conditions on a permit to carry a weapon. In rejecting this contention, the New Jersey appellate court observed that the restricted permit was issued based on the particular "need" of the defendant and for the defendant to argue that such "need" encompasses carrying the weapon all over the State at all hours is to fly in the face of the salutary purpose of the gun control legislation. Accordingly, the conviction of criminal possession was sustained, the court concluding that where a permit to carry a pistol or revolver is issued for a stated limited use, and the weapon is carried or possessed by the licensee for a purpose not reasonably within the authorized use or pursuant to any statutory exception, the licensee may be charged with criminal possession. Pertinent and elucidating commentary on the regulatory purpose underlying the Legislature's enactments to control the use of pistols and revolvers is set forth in *People ex rel. Darling v Warden of City Prison* (154 App Div 413).

Finally, the statutory interpretation engaged in by the majority herein and the result they achieve seriously undermine the salutary aspect of section 400.00 of the Penal Law and dilute the policy consideration emanating from the Legislature's desire to regulate the use of handguns. One illustration of the results flowing from the majority's conclusion would be the overruling, in effect, of this court's precedent in

the application of section 400.00 of the Penal Law. In *Shapiro v Cawley* (46 AD2d 633), we noted the critical distinction of "need" having to be demonstrated for the issuance of a permit to carry a concealed weapon whereas no showing of "need" is required for the issuance of an on-premises license. Obviously, if a licensee who obtains an on-premises license without having to demonstrate need may carry the weapon without fear of criminal prosecution for such possessory use, then there is no necessity for an individual desiring to carry a pistol or revolver to apply for a permit to carry with its higher requirement of establishing "need." Such a result is absurd and common sense dictates it is not a result intended by the Legislature.

Accordingly, the order of the Supreme Court, New York County (MILONAS, J.), entered on February 8, 1979, which dismissed the first count of the indictment charging defendant with criminal possession of a weapon in the third degree should be reversed, on the law, and the first count of the indictment reinstated.

BIRNS, J. P., concurs with BLOOM, J., in an opinion; FEIN, J., concurs with BLOOM, J., and BIRNS, J. P.; LUPIANO, J., dissents in an opinion; YESWICH, J., dissents and concurs only with result reached in dissenting opinion by LUPIANO, J.

Order, Supreme Court, New York County, entered on February 8, 1979 affirmed.