OPINION OF THE COURT
Carol Berkman, J.
The question presented by this case is whether defendant’s possession of a controlled substance was "unlawful” in violation of section 220.03 of the Penal Law when the drugs were prescribed for the defendant but he intended to sell, not to use, them. The issue is apparently one of first impression in this State.
THE FACTS
The information charges two counts of unlawful possession of a controlled substance in the seventh degree. (Penal Law, § 220.03.) The first count alleges that on October 16, 1979, the defendant sold two barbiturate capsules to an undercover officer; the second that he possessed 36 additional capsules. The defendant waived trial by jury, and, at the trial to this court, the People have proved beyond a reasonable doubt that the defendant sold the two capsules to the officer and possessed 36 additional capsules in a prescription vial. These capsules contained a controlled substance, a barbiturate popularly known as tuinal. The defendant, an admitted barbiturate abuser, failed to establish the affirmative defense of entrapment. However, he did offer a prescription for 30 tuinals, issued on October 16, 1979, and his own testimony that the additional eight capsules were left over from a previous prescription. While the defendant’s testimony was somewhat inconsistent in this regard, together with the police chemist’s testimony that the capsules had been legally manufactured, the evidence was sufficient to satisfy the defendant’s burden of coming forward to rebut the statutory presumption of unlawfulness. (See, e.g., People v Rodriguez, 58 AD2d 612.) The People have failed to prove the element of unlawfulness beyond a reasonable doubt as to the 36 capsules found in defendant’s possession after his arrest. As to the two capsules sold to the undercover officer, however, the People have carried their burden. Accordingly, the defendant is found *673 guilty of unlawful possession under the first count of the information.
STATUTES INVOLVED
Section 220.03 of the Penal Law prohibits the knowing and unlawful possession of a controlled substance. Subdivision 2 of section 220.00 of the Penal Law defines "unlawfully” as "in violation of article thirty-three of the public health law.” Section 3304 of the Public Health Law provides that possession of a controlled substance is unlawful "except as expressly allowed by this article.” The article permits the dispensing of controlled substances, as authorized by a valid prescription, to an "ultimate user.” An "ultimate user” is a person who "lawfully obtains and possesses a controlled substance for his own use or the use by a member of his household * * * It shall also mean and include a person designated, by a practitioner on a prescription, to obtain such substance on behalf of the patient for whom such substance is intended.” (Public Health Law, § 3302, subd 33.)
Sections 220.06 and 220.31 of the Penal Law, respectively, prohibit possession with intent to sell and sale of a controlled substance. Section 220.06 has the same elements as section 220.03 of the Penal Law, except that section 220.06 requires the proof of an additional element, intent to sell.
CONCLUSIONS OF LAW
Article 33 was intended to "help reduce the diversion of potentially dangerous drugs from legal medical and research uses into illegal channels.” (Governor’s Message of Approval, L 1972, ohs 878-881, NY Legis Ann, 1972, p 369.) An analysis of the statute demonstrates that the Legislature was not limiting its regulatory efforts to wholesalers and legal retailers of drugs. Patients, too, are included.
Significantly, under the New York statute, the only prescription authorized is one which permits "an ultimate user lawfully to obtain controlled substances” (Public Health Law, § 3302, subd 29), and an "ultimate user” is one who "lawfully obtains and possesses a controlled substance for his own use” or "a person designated, by a practitioner on a prescription, to obtain such substance on behalf of [a] patient.” (Public Health Law, § 3302, subd 33.) This definition is even more restrictive than that contained in the Federal statute *674 after which the New York statute was patterned. The Federal statute defining "ultimate user” does not require that the prescription designate the person authorized to obtain the controlled substance on the patient’s behalf, and has been interpreted to permit the patient himself to designate anyone as his agent for that purpose. (US Code, tit 21, § 802, subd [25]; United States v Forbes, 515 F2d 676, 680.)*
At the very least, the variance between New York’s statute and the Federal statute after which it was patterned demonstrates that our Legislature paid close attention to the defining of "ultimate user.” This court is bound not to construe the statute so as to render without purpose any provision or words deliberately included by the Legislature. (People v Dethloff, 283 NY 309, 315; also see People v Sierra, 45 NY2d 56, 62.) A holding that a person who has obtained a controlled substance pursuant to a prescription has carte blanche and still possesses those drugs lawfully even when he no longer intends them "for his own use” would ignore language deliberately placed in the statute by the Legislature.
This conclusion is supported by United States v Forbes (supra) and State v Sanderson (550 SW2d 236 [Tenn]). It is not precluded by the decision in People v Rodriguez (58 AD2d 612, supra).
In Forbes, the court interpreted subdivision (a) of section 844 of title 21 of the United States Code which makes possession of a controlled substance illegal unless "obtained * * * pursuant to a valid prescription”. The court held that it was not enough that the drugs had been "obtained” legally. The possession, as well, must be "pursuant to a valid prescription.” (United States v Forbes, 515 F2d 676, 680, supra.) The rest of the opinion makes clear that drugs are not possessed "pursuant to a valid prescription” unless possessed for purposes (p 680, n 11) "consistent with the prescription.” On the theory that whatever a person is legally capable of doing himself he can do through an agent, the court held that the patient could designate an agent for the possession of the drugs, but only for *675 a legitimate purpose. Possession for resale by the agent — or, it follows, by the patient — is not a legal possession because it is not (p 680, n 11) "consistent with the prescription”. (See, also, p 682, n 15.)
Similarly, in State of Sanderson (550 SW2d 236 [Tenn], supra) the defendant was charged with possessing a controlled substance not "obtained by means of a valid prescription.” Although Sanderson was not charged under the fraud section (that is the equivalent of Public Health Law, § 3397), the court concluded that (p 239) "the 'valid prescription’ exception is only applicable * * * when the person obtaining the prescription is * * * acting in good faith and is free from fraud, deceit or misrepresentation.” The concurrence in Sanderson also espouses the view that possession for an illegitimate purpose is illegal, notwithstanding whether the drugs were legally "obtained” (p 240): "Construed in light of the evident legislative intent to exempt only possession for bona fide medical purposes, I would hold that the words 'pursuant to a valid prescription’ authorize possession only by the patient named in the prescription as the intended ultimate user or by the duly authorized agent of such patient who, in possessing the substance is carrying out the purpose of the prescription, e. g., a relative or friend of a patient who takes a valid prescription to a pharmacy, obtains the medication and takes it home to the patient” (emphasis omitted).
The conclusion that intent to sell renders possession unlawful notwithstanding the existence of a prescription is not precluded by People v Rodriguez (58 AD2d 612, supra). In Rodriguez, the Second Department reversed a "conviction” for possession of methadone because the defendant had rebutted the presumption of unlawfulness and the People had not proved that element beyond a reasonable doubt without resort to the presumption. A conviction for sale of a controlled substance was affirmed, but it is not clear from the face of the opinion whether the sale conviction related to the same methadone as involved in the possession count or counts, or even whether the sale was of methadone or some other controlled substance. In fact, while the briefs in Rodriguez make clear that the sale conviction was for the sale of methadone, they are not entirely clear or consistent on the question of whether the possession count relates to the vial of methadone sold, the vial found on the defendant after his arrest, or both. It would appear from the People’s brief that the possessory counts *676 relating to the vial of methadone sold were dismissed at resentencing pursuant to CPL 300.40 (subd 3, par [b]).
Had Rodriguez squarely and plainly dealt with the issue here, this court would be bound by the decision. (1 CarmodyWait 2d, NY Prac, § 2:63.) But that rule "presupposes the existence of a well-deñned precedent” (1 Carmody-Wait 2d, NY Prac, § 2:52, p 62 [emphasis added]). Certainly the principle that the defense asserts — that possession by prescription is legal whatever the intent of the possessor — is impossible to derive from the face of the Rodriguez decision. In short, whatever the true record facts in Rodriguez, it is not binding precedent here. (1 Carmody-Wait 2d, NY Prac, § 2:57, p 67.)
Two recent decisions of the Appellate Division, First Department, suggest that court’s willingness to give great juridical significance to the intent of a possession. In People v Parker (70 AD2d 387, opp pending), a gun case, both the plurality opinion and Mr. Justice Markewich’s concurrence focused on the allegation of intent to assault. Such an intent took the gun possession involved out of the exemption in section 265.20 (subd a, par 3) of the Penal Law, notwithstanding the defendant’s limited license to possess a gun. Indeed, Mr. Justice Silverman remarked, writing for the plurality (p 390), "it is hard to see why even possession of an unlimited license should exempt one from section 265.03 which penalizes possession of a loaded firearm 'with intent to use the same unlawfully against another.’ ” In contrast, in People v Serrano (71 AD2d 258, 260-261, opp pending), where there was no unlawful intent, the exemption of section 265.20 (subd a, par 3) of the Penal Law continued to apply. It is, therefore, hardly unique to make the permission granted by a license — or a prescription — depend on the intent of the possession.
Finally, this conclusion, that possession of a controlled substance with intent to sell is not lawful possession, is not precluded by the statute permitting prosecution for the far more serious crime of selling, or by another statute specifically prohibiting possession with intent to sell. The choice of the lesser or more punitive statute is properly one within the prosecutor’s discretion, as long as both statutes fit the facts of the case. (See People v Eboli, 34 NY2d 281.) There is no claim here that the prosecutorial discretion was not lawfully exercised and it is, in any event, doubtful that the defendant here would have standing to make that claim.
The defendant is, accordingly, found guilty of violating *677 section 220.03 of the Penal Law under the first count of the information and acquitted under the second count.

 The agency issue has not been decided in this State and is not free from doubt. Compare section 3305 (subd 1, par [c]) of the Public Health Law which exempts "temporary incidental possession by * * * agents or persons lawfully entitled to possession” with subdivision 3 of section 3302 which narrowly defines "agent” as one "who acts on behalf of * * * a manufacturer, distributor or dispenser” and subdivision 33 of section 3302 which appears to require that the patient’s agent be specifically designated by the practitioner in the prescription.