■ In the Matter of KATINA VALENCIA H. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WESLEY B., Appellant. (Proceeding No. 1.) In the Matter of WESLEY H. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WESLEY B., Appellant. (Proceeding No. 2.)—In two proceedings pursuant to Family Court Act article 6, *inter alia,* to terminate parental rights, the natural father appeals from an order of the Family Court, Nassau County (Diamond, J., at dispositional hearing; Cohen, J., at fact-finding hearing), entered April 5, 1984, which, after fact-finding and dispositional hearings, declared the two children in question to be permanently neglected and transferred guardianship and custody rights to the petitioner.

Order affirmed, without costs or disbursements.

The children who are the subjects of these proceedings, Katina and Wesley, are now 13 and 11 years of age, respec-

tively, and have been in foster care since August 11, 1975. The placement was based upon a neglect petition filed against the children's mother, who died on January 5, 1978.

The appellant was adjudicated the father of both children by orders of filiation dated September 17, 1975. On August 26, 1980, the petitioner Nassau County Department of Social Services petitioned the Family Court, Nassau County, for an order declaring the children to be permanently neglected and committing their guardianship and custody to it.

At the fact-finding hearing, the petitioner adduced overwhelming evidence that the appellant had failed to maintain contact with his children and plan for their future. The evidence showed that the appellant had visited with his children only eight times since their placement in foster care, and had not visited them since October 1977. The petitioner had attempted to arrange numerous other visits but its efforts were thwarted by the appellant's failure to keep appointments and his failure to keep the petitioner apprised of his whereabouts. It is notable that, between October 1977 and June 1978, the appellant failed to visit his children despite the fact that they resided at a foster home which was in the immediate neighborhood of the home of the appellant's mother. The testimony at the hearing also established that the petitioner was unable to locate the appellant between January 1977 and September 1977 and between January 1978 and January 1980. When the appellant was finally located in January 1980, he was asked to call the petitioner to arrange for visitation with the children, but failed to do so. The appellant himself admitted that he had been addicted to heroin off and on from 1967, that he had been incarcerated several times, and that he had no plans for the children other than to get them back. Both children testified at the hearing. Neither child had any specific memory of the appellant and neither remembered seeing him or hearing from him except for receiving a few letters.

This overwhelming evidence of the appellant's neglect and lack of parental concern is not challenged on appeal. Instead, the appellant contends that the finding of permanent neglect was erroneous because the petitioner failed to prove that it made "diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; see, Matter of Sheila G., 61 NY2d 368). While we agree that normally a petitioner is required to show that "reasonable attempts" have been made to foster the parent-child relationship (see, Matter of Sheila G., supra, p 385), no such proof is required where, as here, "the parent has failed for a period of

six months to keep the agency apprised of his or her location" (Social Services Law § 384-b [7] [e]). The record shows that the appellant could not be located for an eight-month period in 1977 and for nearly two years from January 1978 to January 1980. These absences excuse any "diligent efforts" required on the petitioner's part *(see, Matter of Melanie Ruth JJ,* 76 AD2d 1008, 1009, *lv denied* 51 NY2d 710). Furthermore, even if "diligent efforts" were required in this case, we would agree with the Family Court that the petitioner had satisfied its statutory duty. In this area it is obvious that since the Family Court had an opportunity to see and hear the witnesses, its findings must be accorded the greatest respect *(see, Matter of Nathaniel T.,* 67 NY2d 838). The record clearly shows that whatever efforts the petitioner made were rebuffed by an utterly uncooperative and indifferent father. The father apparently still has gained no insight into his own behavior which has resulted in the placement in foster care of his children for over 10 years with corresponding damaging effects *(see, Matter of Nathaniel T., supra; Matter of Sheila G., supra).*

The appellant also argues that the Family Court erred by refusing to suspend judgment for a year rather than ordering the immediate termination of his guardianship and custody rights. This argument is meritless. Bearing in mind that these unfortunate children have lived in the limbo of foster care and litigation for more than 10 years, we conclude that any disposition other than immediate termination of parental rights, and freeing the children for adoption, would be error *(Matter of Nathaniel T., supra).* The most disturbing aspect of this case is the excessive length of time that it has taken to terminate the appellant's parental rights. To further postpone this unfortunate but necessary step "would be an abdication of our primary duty of concern for the welfare of the child[ren]" *(Matter of Ray A. M.,* 48 AD2d 161, 165, *affd* 37 NY2d 619). Rubin, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.