*1035 OPINION OF THE COURT
Mara T. Thorpe, J.
This proceeding has been filed by Lutheran Community Services, Inc., an authorized child-care agency, pursuant to Social Services Law § 384-b. It seeks termination of the respondent mother’s parental rights to her daughter on the ground of permanent neglect. The principal issue raised by the motions now before the court is whether subdivision (7) (e) of Social Services Law § 384-b completely relieves the agency of its statutory obligation to encourage and strengthen the parent-child relationship and reunite the family, where the parent fails to keep the agency apprised of her location for a period of six months, and more than a year is then permitted to elapse between the time the agency again learns of the parent’s whereabouts and the time it commences a proceeding to terminate her rights to the child under Social Services Law § 384-b.
The respondent has moved to dismiss the amended petition for failure to set forth in detail the efforts made by the petitioner to encourage and strengthen the parent-child relationship and to reunite the family. The petitioning agency opposes the motion on the ground that it was not required to use such efforts in this case. The agency has also made an oral cross motion for leave to amend the petition in the event that the court rules that it was obligated to use diligent efforts to reunite the family during any portion of the time period in issue. For the reasons set forth below, the motion to dismiss is denied and the cross motion for leave to amend the petition is granted.
A permanently neglected child is one "who is in the care of an authorized agency and whose parent * * * has failed for a period of more than one year following the date such child came into the [agency’s care] substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child.” (Social Services Law § 384-b [7] [a].) "Diligent efforts” are defined in Social Services Law § 384-b (7) (f) and include developing a plan for appropriate services for the family, arranging visits for the parent with the child, providing services and assistance to the parent to resolve the problems preventing return *1036 of the child, and keeping the parent informed of the child’s progress.
The threshold determination to be made in a permanent neglect proceeding is whether the agency has met its "diligent efforts” obligation, and, thus, when a child-care agency brings a proceeding to terminate parental rights on the ground of permanent neglect, "it must affirmatively plead in detail and prove by clear and convincing evidence” that it has fulfilled the duty imposed on it by Social Services Law § 384-b (7) (a) that it use diligent efforts to encourage and strengthen the parent-child relationship and to reunite the family. (Matter of Sheila G., 61 NY2d 368, 373; emphasis supplied.)
The only paragraph in the amended petition which pertains to the agency’s "diligent efforts” obligation states as follows: "5. For more than a year following the date the infant came into petitioner’s care, the petitioner has made diligent efforts to strengthen the natural mother’s parental ties with the infant by encouraging her to maintain contact with the infant and plan for the infant’s return.” It is evident that this paragraph does not meet the requirement for a detailed pleading of the agency’s efforts to encourage and strengthen the parent-child relationship and to reunite the family imposed by the Court of Appeals in Matter of Sheila G. (supra).
The petitioner argues that even if the foregoing allegation is not sufficiently detailed for a case in which a demonstration of diligent efforts is required, Social Services Law § 384-b (7) (e) exempts an agency from the requirement that it allege and prove diligent efforts to reunite the family where the petition also alleges that the respondent failed to keep the agency apprised of her location for six months following the date the child came into its care. The petitioner asserts that the period of permanent neglect which it will prove in this case is from March 1985 through October 1986 and that it will prove that the respondent did not apprise it of her location between March 18, 1985 and September 18, 1985, which failure obviates the need for a showing of "diligent efforts” thereafter.
Section 384-b (7) (e) of the Social Services Law, upon which the petitioner relies, provides in pertinent part as follows:
"Notwithstanding the provisions of paragraph (a) of this subdivision, evidence of diligent efforts by an agency to encourage and strengthen the parental relationship shall not be required when:
"(i) The parent has failed for a period of six months to keep the agency apprised of his or her location”.
*1037 The petitioner argues that this section must be interpreted to mean that the failure of a parent to keep an agency apprised of her location for any six-month period operates to relieve the agency of its obligation to use diligent efforts to reunite the family during any portion of the time the child is in its care. In this particular instance, however, the agency seeks to be excused from the "diligent efforts” requirement during the period it claims to have been unaware of the respondent’s whereabouts and the following 13-month period of foster care. It does not seek to be excused from that obligation during any portion of the time preceding the six-month period.
It is a basic rule of statutory interpretation and construction that a court must strive to ascertain and give effect to the intention of the Legislature which enacted a statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a]; American Dock Co. v City of New York, 174 Misc 813, affd 261 App Div 1063, affd 286 NY 658.) This is first to be sought from a literal reading of the words and language of the statute itself; however, if after having so examined the statute its meaning is not clear, the court must consider extrinsic matters in an effort to ferret out the legislative intent. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b].)
The court does not agree with the petitioner that the language of Social Services Law § 384-b (7) (e) clearly compels the interpretation it urges and excludes all others. On the contrary, the section is just as susceptible of the alternative interpretation that where a parent fails to keep the agency apprised of her location for a period of six months, the agency is excused from the "diligent efforts” requirement only during the period that the parent’s whereabouts remain unknown.
Appellate case law on the correct interpretation of the statute points in two directions. Although the precise issue raised in this case has not yet been squarely presented to the Court of Appeals, that court has nonetheless made reference to the exception to the "diligent efforts” requirement at issue which is instructive. In reviewing the strong public policy and practical considerations underlying the Legislature’s determination that a demonstration of diligent efforts to reunite the family should be a threshold requirement in a permanent neglect proceeding, the court observed that there are only "limited instances” in which an agency may be excused from that requirement (Matter of Sheila G., 61 NY2d 368, 383, n 5, *1038 supra): (1) where such efforts would be detrimental to the child’s best interests (Social Services Law § 384-b [7] [a]); (2) where the parent has failed for six months to keep the agency apprised of her location (Social Services Law § 384-b [7] [e] [i]); and (3) where an incarcerated parent fails to cooperate with the agency (Social Services Law § 384-b [7] [e] [ii]). With regard to the second exception, the one in issue here, the court noted that it is limited by the indication in the legislative history that it was not intended to apply "when the agency could, without a 'diligent search,’ determine the parent’s location” (Matter of Sheila G., supra, at 383, n 5).
The statement of legislative intent referred to by the Court of Appeals is found in the 1976 Report of the Temporary State Commission on Child Welfare entitled Barriers to the Freeing of Children for Adoption. That report contains the results of the Commission’s study of the operation of the laws under which parental rights to children in foster care could be terminated and its proposed legislation for remedying the problems in the process which tended to deprive those children of access to permanent family relationships and keep them, to their detriment, in the limbo of foster care (see, mem of Temporary State Commn on Child Welfare, 1976 NY Legis Ann, at 239). This report was adopted by the Legislature (Matter of Sheila G., supra, at 381) and the Commission’s legislative proposal was enacted as Laws of 1976 (ch 666), of which Social Services Law § 384-b was a part.
Regarding its recommendation that there be an exception to the "diligent efforts” requirement where the parent fails for a period of six months to keep the agency apprised of his or her location, the Commission stated: "This exception to the diligent effort requirement is intended to relieve the agency of any affirmative obligation to make a 'diligent search’ in order to locate missing parents, but if the agency otherwise knows (without a 'diligent search’) the parent’s location, the exception is not intended to apply. ” (Barriers to the Freeing of Children for Adoption, 1976 Report of Temporary State Commn on Child Welfare, at 25 [hereafter 1976 Report]; emphasis added.) It must be noted that the language adopted by the Legislature in what is now Social Services Law § 384-b (7) (e) (i)[1] is *1039 identical to that proposed by the Commission in its 1976 Report. (See, op. cit., Appendix I, at 11.)
An alternative interpretation of Social Services Law § 384-b (7) (e) is found in Matter of Lee Ann N. (110 AD2d 979), which the petitioner argues is controlling here. In that case, the Appellate Division, Third Department, decided that the lapse of a period of seven months, during which the child-care agency did not know the respondent parent’s location, excused the agency from its obligation to use diligent efforts to reunite the family during the entire period of permanent neglect. This conclusion is reached in the opinion without reference to the legislative history of Social Services Law § 384-b (7) (e) contained in the 1976 Report of the Temporary State Commission on Child Welfare and without discussion of the Court of Appeals reference to that history. Nor did the court state in that decision whether the balance of the period of permanent neglect (five months) occurred before or after the seven-month hiatus in contact with the agency. However, from the wording of the decision and from the fact that less than four months elapsed between the parent’s reappearance and entry of the order terminating her parental rights on the ground of permanent neglect, it can be inferred that the balance of that period occurred prior to the seven-month period.* [2] It appears, therefore, that the court’s application of Social Services Law § 384-b (7) (e) was retroactive, that is, that it held that the respondent’s failure to keep the agency apprised of her whereabouts for seven months operated to excuse the agency from its "diligent efforts” obligation prior to the time she disappeared.
It does not appear that the question of the scope of Social Services Law § 384-b (7) (e) has been squarely presented to any other appellate court. In Matter of O. Children (128 AD2d 460), the Appellate Division, First Department, reversed the Family Court’s dismissal of a permanent neglect proceeding concerning children who had been in foster care for a period of more than two years, holding that it had been established *1040 that the agency met its "diligent efforts” obligation and that the respondents had failed to maintain contact with the children and to plan for their future. The court did go on to state (at 465) that "[sjince an agency does not have to make diligent efforts to strengthen a parental relationship when there is a failure to keep the agency apprised of a location for a period of six months * * * the agency’s efforts on behalf of the father were unnecessary.” In that case, however, the father had never given the agency an address where he could be reached. Thus, there was no issue that the statutory exception to the "diligent efforts” requirement was applicable for the entire period requisite for a showing of permanent neglect. The decision therefore provides no guide as to whether the First Department would give the statute a narrow or broad interpretation on the facts of the instant case.
Similarly, in Matter of Katina Valencia H. (119 AD2d 821, 822-823), the Appellate Division, Second Department, stated that "[wjhile * * * normally a petitioner is required to show that 'reasonable attempts’ have been made to foster the parent-child relationship * * * no such proof is required where, as here, 'the parent has failed for a period of six months to keep the agency apprised of his or her location’ (Social Services Law § 348-b [7] [ej).” In this case as well, however, the parent’s whereabouts was unknown for well over two years. Since permanent neglect can occur during any period in excess of a year while a child is in an agency’s care (Matter of Melanie Ruth JJ, 76 AD2d 1008, lv denied 51 NY2d 710), however, the failure of the parent to have apprised the agency of his whereabouts for over a year relieved the agency of its "diligent efforts” obligation even under a narrow interpretation of the statute. Thus, it is not possible to ascertain from this case what interpretation the Second Department would give the statute as applied to the facts presented here.
This court is mindful of the rule which requires a trial court to follow decisions made by the Appellate Division of another department when the issue before it has not been ruled upon by either the Court of Appeals or its own Appellate Division. (Mountain View Coach Lines v Storms, 102 AD2d 663.) Since the Appellate Division of the First Department has not ruled squarely on the issue presented herein, the question is whether this court is bound to interpret Social Services Law § 384-b (7) (e) broadly, as did the Third Department in Matter of Lee Ann N. (110 AD2d 979, supra), or whether it may give *1041 it the narrower interpretation suggested by the Court of Appeals in Matter of Sheila G. (61 NY2d 368, supra).
Cases are precedents only for questions which have been presented and expressly decided. (Empire Sq. Realty Co. v Chase Natl. Bank, 181 Misc 752, affd 267 App Div 817.) Unless a case squarely and plainly deals with an issue and unless the principle it espouses is well defined, it does not create a binding precedent. (People v Garthaffner, 103 Misc 2d 671, affd 115 Misc 2d 93; see, Empire Sq. Realty Co. v Chase Natl. Bank, supra.)
The facts here differ significantly from those in Matter of Lee Ann N. (supra). There the court appears to have determined that the statute excuses an agency from using diligent efforts to reunite a family during the period of six months or more the parent fails to keep the agency apprised of her location and during the preceding period of foster care as well. Here, the child has continued in foster care for more than a year after the agency concedes it again became aware of the parent’s location and it is during this latter period that the agency argues it is excused from its "diligent efforts” obligation. Furthermore, since the Lee Ann N. opinion does not discuss the reason why the court interpreted the statute as it did, it cannot be said that a principle guiding its application has been clearly defined. Nor is it even clear that the question of an alternative interpretation was presented to and decided by that court. For these reasons, the court has concluded that it is not required to treat Matter of Lee Ann N. (110 AD2d 979, supra) as controlling authority in this case.
This court is persuaded that the Legislature did not intend Social Services Law § 384-b (7) (e) to excuse an agency from its "diligent efforts” obligation where a substantial period elapses between the time the agency becomes aware of the parent’s location and the time a permanent neglect proceeding is commenced. Not only does this construction of the statute appear to be required by the statement of legislative intent quoted above and the Court of Appeals reference thereto, it is also consistent with the importance given the "diligent efforts” requirement itself by the Legislature. Indeed, the Legislature considered the requirement to be pivotal in the implementation of the State’s policy regarding children in foster care.
This policy is embodied in part in the "legislative findings and intent” found in the first section of section 384-b of the *1042 Social Services Law. That section states in relevant part that "it is generally desirable for [a] child to * * * be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home” (Social Services Law § 384-b [1] [a] [ii]) and that "the state’s first obligation is to help the family with services to * * * reunite it” (Social Services Law § 384-b [1] [a] [iii]). Underlying the latter statement is the conclusion that a child-care agency’s ability and duty to strengthen the parent-child relationship is critical to the parent’s ability to plan for the child’s future and regain custody of the child. (See, 1976 Report, at 100; Matter of Sheila G., 61 NY2d 368, supra.) As the Court of Appeals has pointed out, not only is "an agency * * * in a superior position to the parent with respect to the planning factor” (Matter of Sheila G., supra, at 381), but indifference or inaction on its part may impede the parent’s attempts at reunification. Thus, the court went on to state (at 385), the Legislature "recognized that the degree to which a parent has upheld his or her obligations to [a child in foster care] cannot be meaningfully measured when the agency itself has not undertaken diligent efforts on behalf of reuniting parent and child.”
Additionally, the interpretation of Social Services Law § 384-b (7) (e) urged by the petitioner is inconsistent with the requirement in Social Services Law § 384-b (4) (b) that an abandonment cause of action be predicated on parental failure to visit the child and communicate with the child or agency during the six months immediately preceding the filing of the petition. When a parent fails to keep the agency apprised of her whereabouts for six months, there is ordinarily also a failure to visit with the child and to communicate with the child or agency. To permit an agency to terminate parental rights without having made diligent efforts to reunite the family because the parent was out of contact with the child and agency for a six-month period which does not immediately precede the filing of the petition would be contrary to the express intention of the Legislature as set forth in Social Services Law § 384-b (4) (b).
In view of the evidence of the intent of the drafters of the language now contained in Social Services Law § 384-b (7) (e) (i), and in view of the importance of the "diligent efforts” requirement in securing the home of first choice for a child in foster care, i.e., the natural parent’s home, it seems evident to this court that were the issue of the proper construction of *1043 that section, as applied to the facts of the instant case, to be presented to the Court of Appeals, it would very likely hold that the statute does not excuse "diligent efforts” subsequent to the period that a parent fails to keep an agency apprised of her location where 13 months have elapsed since the agency learned of the parent’s whereabouts. Laws of 1976 (ch 666) was intended to remove the barriers to the securing of permanent homes for children within a reasonable time. A broader interpretation of Social Services Law § 384-b (7) (e) would permit an agency to retain a child in the limbo of foster care while taking neither the actions deemed essential by the Legislature to facilitate the child’s return to her natural family nor those necessary to otherwise secure a permanent home for her. The court therefore respectfully declines to extend the holding in Matter of Lee Ann N. (110 AD2d 979, supra) to the facts of this case.
For the foregoing reasons, the petitioner’s motion to amend the petition is granted on condition it serve and file its amended petition by June 18, 1987, and the respondent’s motion to dismiss is denied with leave to renew if the petitioner fails to further amend its petition as directed.

. The language now contained in the opening clause and clause (i) of Social Services Law § 384-b (7) (e) was originally contained solely in paragraph (e). By Laws of 1983 (ch 911, § 3), paragraph (e) was divided into the opening clause and clause (i), and a third exception to the "diligent efforts” *1039 requirement which pertains solely to incarcerated parents was added as clause (ii).

. The court stated: "Notwithstanding the lack of such obligation, the record discloses that before respondent absconded, petitioner made numerous efforts to help respondent reunite with her children.” (Matter of Lee Ann N., 110 AD2d 979, 980.) Allowing time for service of process and the scheduling and holding of the fact-finding and dispositional hearings, it seems fair to infer that the permanent neglect proceeding was commenced shortly after the parent’s whereabouts again became known.